Citation Nr: 1456937 
Decision Date: 12/31/14 Archive Date: 01/09/15

DOCKET NO. 11-25 792 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUE

Entitlement to a higher (compensable) initial disability rating (or evaluation) for status post left wrist fracture (a left wrist disability).


REPRESENTATION

Appellant represented by: North Carolina Division of Veterans Affairs


ATTORNEY FOR THE BOARD

J. Ragheb, Associate Counsel


INTRODUCTION

The Veteran, who is the appellant, served on active duty from September 1991 to November 1993.

This case comes before the Board of Veterans' Appeals (Board) on appeal from an October 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina, which granted service connection for a left wrist disability, initially assigning a noncompensable (zero percent) rating.

The Board previously remanded this case in January 2014 and July 2014 for additional development, to include obtaining relevant VA treatment records and to afford the Veteran a VA examination and secure an addendum opinion as to the severity of the left wrist disability on appeal. This was accomplished, and the Board concludes that the Agency of Original Jurisdiction (AOJ) substantially complied with the January 2014 and July 2014 Board remand directives. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (Fed. Cir. 2002). Further discussion regarding AOJ compliance with the January 2014 and July 2014 Board remand directives is contained in the Duties to Notify and Assist section below.

The Board has reviewed both the Veterans Benefits Management System (VBMS) and the "Virtual VA" files so as to insure a total review of the evidence. 


FINDINGS OF FACT

1. Throughout the initial rating period on appeal, the service-connected status post left wrist fracture has been manifested by arthritis and noncompensable limitation of motion of the left wrist, to include as due to pain, weakness, fatigability, or incoordination.

2. Throughout the initial rating period on appeal, the service-connected status post left wrist fracture has not been manifested by left wrist dorsiflexion of less than 15 degrees, palmar flexion limited in line with the forearm, or favorable or unfavorable ankylosis of the left wrist.

3. Throughout the initial rating period on appeal, the neurological abnormalities associated with the left wrist disability more nearly approximate mild incomplete paralysis of the left upper extremity radial nerve.


CONCLUSIONS OF LAW

1. Resolving reasonable doubt in the Veteran's favor, the criteria for an initial 10 percent rating, and no higher, for the service-connected status post left wrist fracture are met for the entire initial rating period on appeal. 38 U.S.C.A. 
§§ 1155, 5107(a) (West 2014); 38 C.F.R. §§ 3.102, 3.321, 4.1, 4.2, 4.3, 4.7, 4.71a, Diagnostic Codes 5003, 5214, 5215 (2014).

2. Resolving reasonable doubt in the Veteran's favor, the criteria for a separate rating of 20 percent for left upper extremity mild radial nerve involvement, associated with the service-connected left wrist disability, have been met for the entire initial rating period on appeal. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.321, 4.1, 4.2, 4.3, 4.7, 4.124, 4.124a, Diagnostic Code 8514 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) enhanced VA's duty to notify and assist claimants in substantiating their claims for VA benefits. 
38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002); 38 C.F.R. 
§§ 3.102, 3.156(a), 3.159, 3.326(a) (2014). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim and of the relative duties of VA and the claimant for procuring that evidence. 38 U.S.C.A. § 5103(a); 38 C.F.R. 
§ 3.159(b). Such notice should also address VA's practices in assigning disability ratings and effective dates for those ratings. See Dingess/Hartman v. Nicholson, 
19 Vet. App. 473 (2006). Notice should be provided to a claimant before the initial unfavorable AOJ decision on a claim. 38 C.F.R. § 3.159(b)(1); Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004); see also Mayfield v. Nicholson, 19 Vet. App. 103, 110 (2005), rev'd on other grounds, 444 F.3d 1328 (Fed. Cir. 2006). 

In an appeal for a higher initial rating, because the appeal arises from the Veteran's disagreement with the initial rating following the grant of service connection, no additional notice is required. The United States Court of Appeals for the Federal Circuit and the United States Court of Appeals for Veterans Claims (Court) have held that, once service connection is granted, the claim is substantiated, additional notice is not required, and any defect in notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App.112 (2007); 38 C.F.R. § 3.159(b)(3)(i) (no duty to provide VCAA notice upon receipt of a notice of disagreement); VAOPGCPREC 8-2003 (in which the VA General Counsel interpreted that separate notification is not required for "downstream" issues following a service connection grant, such as initial rating and effective date claims).

In this case, the Veteran was provided notice in July 2010, prior to the initial adjudication of the claim in October 2010. The July 2010 notice letter informed the Veteran of the evidence not of record that was necessary to substantiate the claim for service connection for a left wrist disability, VA and the Veteran's respective duties for obtaining evidence, and included information regarding the type of evidence necessary to establish a disability rating or effective date for the disability on appeal required by Dingess. 

With regard to the duty to assist, VA has made reasonable efforts to obtain relevant records and evidence with respect to the issues adjudicated herein. Specifically, the information and evidence that has been associated with the claims file includes the Veteran's service treatment records (STRs), post-service treatment records, to include all VA treatment records as requested by the January 2014 Board remand, relevant VA examination reports, and the Veteran's statements in support of the claim or issue on appeal.

In September 2010 and March 2014, VA provided the Veteran with VA medical examinations to help determine the severity of the left wrist disability on appeal. Pursuant to the July 2014 Board remand, the Board obtained an addendum opinion in September 2014 as to the severity of the left wrist disability as well as whether the left wrist disability resulted in left upper extremity nerve involvement. As the above-referenced VA medical examination reports were written after interviews with the Veteran, examinations of the Veteran, and contain findings regarding the severity of the left wrist disability supported by clinical data, the Board finds that, taken together, the September 2010 and March 2014 VA examination reports, as well as the September 2014 addendum report are adequate for VA rating purposes. 

In considering the VA examination and addendum reports of record, the Board notes that a VA medical examination is not inadequate merely because the medical examiner states he or she cannot reach a conclusion without resort to speculation. Jones v. Shinseki, 23 Vet. App. 382 (2011). Thus, while VA has a duty to assist a veteran by providing a medical examination in certain situations, that duty does not extend to requiring a VA physician to render an opinion beyond what may reasonably be concluded from the procurable medical evidence. Nevertheless, simply concluding that a medical question could not be resolved without speculation, without providing any explanation why, renders an opinion inadequate. Id. The phrase "without resort to speculation" should reflect the limitations of knowledge in the medical community at large and not those of a particular examiner. Further, the examiner should clearly identify precisely what facts cannot be determined. For example, it should be clear in the examiner's remarks whether the answer to a medical question cannot be determined from current medical knowledge. Id. 

In this regard, the Board observes that the September 2014 addendum opinion did not provide limitation of motion measurements after considering functional impairment during flare-ups or due to pain, weakness, fatigability, and incoordination. However, the September 2014 VA examiner explained that it is not possible without resorting to mere speculation to estimate either loss of range of motion or describe loss of function, because there is no conceptual or empirical basis for making such a determination without directly observing function under these conditions. Here, it is not possible to schedule an examination during a flare-up or anticipate when the Veteran may experience pain, weakness, fatigability or incoordination from the left wrist disability; therefore, limitation of motion measurements under these conditions cannot be provided due to limitations of medical knowledge and practicalities of scheduling the Veteran for a VA examination when he experiences one of the above-referenced limitations. Certainly, the Veteran can seek medical care during flare-ups or when he experiences pain, weakness, fatigability or incoordination, which would then be recorded in his treatment (medical) records and be available for VA to review when rating the disability on appeal. 

The Board finds that the VA examination reports, along with VA treatment records of record and the Veteran's reports of symptoms, are sufficient to rate the left wrist disability on appeal because all of these record provide a uniform disability picture during the initial rating period on appeal, as outlined in more detail below. VA considers all evidence in its adjudications, including rating disabilities, not just medical information or only information that is included in a VA examination report or treatment records. 38 U.S.C.A. § 7104(a) ("Decisions of the Board shall be based on the entire record in the proceeding and upon consideration of all evidence and material of record"); 38 U.S.C.A. § 5107(b) ("Secretary shall consider all information and lay and medical evidence of record in a case"); 38 U.S.C.A. 
§ 1154(a) (VA Secretary to provide regulatory provisions requiring due consideration of "all pertinent medical and lay evidence"). VA considers the history and context of a disability as important when rating that disability, and seeks a comprehensive picture of disability from the point of view of the veteran. See 38 C.F.R. §§ 4.1, 4.2. 

The Board also notes that the September 2014 addendum did not provide limitation of motion measurements of left hand individual digits; however, the Board finds that such measurements are not necessary because, as explained below, the Board is granting a separate 20 percent rating for radial nerve involvement of the left wrist, hand, and fingers, which contemplates all the symptoms pertaining to the left upper extremity as reported by the Veteran and according to the clinical evidence of record. Accordingly, the Board finds that remand for another VA examination or opinion is not necessary.

As such, VA has provided assistance to the Veteran as required under 38 U.S.C.A. § 5103A and 38 C.F.R. § 3.159(c), as indicated under the facts and circumstances in this case. The Veteran has not made the RO or the Board aware of any additional evidence that needs to be obtained in order to fairly decide this appeal. Mayfield, 19 Vet. App. at 1328. Hence, no further notice or assistance is required to fulfill VA's duty to assist the Veteran in the development of the claim or issue on appeal.


Disability Rating Legal Authority

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities. The percentage ratings are based on the average impairment of earning capacity and individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1 (2014). If two ratings are potentially applicable, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Any reasonable doubt regarding a degree of disability will be resolved in favor of the veteran. 38 C.F.R. § 4.3. 

In view of the number of atypical instances it is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified. Findings sufficiently characteristic to identify the disease and the disability therefrom, and above all, coordination of rating with impairment of function will, however, be expected in all instances. 38 C.F.R. § 4.21 (2014). In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of a veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). 

When a claimant is awarded service connection and assigned an initial disability rating, separate disability ratings may be assigned for separate periods of time in accordance with the facts found. Such separate disability ratings are known as staged ratings. See Fenderson v. West, 12 Vet. App. 119, 126 (1999) (noting that staged ratings are assigned at the time an initial disability rating is assigned). Here, the Board will evaluate the issues as appeals for higher ratings of the original awards. In such cases, the severity of the disability at issue is to be considered during the entire period from the initial assignment of the disability rating to the present time. Id. The Board has considered whether staged ratings are warranted in this case, and finds that the severity of the left wrist disability on appeal has not changed during the course of the appeal so as to warrant staged ratings, as explained below. 

Pyramiding, that is the rating of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided when rating a veteran's service-connected disability. 38 C.F.R. § 4.14 (2014). However, it is possible for a veteran to have separate and distinct manifestations from the same injury which would permit rating under several diagnostic codes; the critical element in permitting the assignment of several ratings under various diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of the other condition. See Esteban v. Brown, 6 Vet. App. 259, 261- 62 (1994).

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990).

Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 
10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify"). A veteran is competent to report symptoms because this requires only personal knowledge, not medical expertise, as it comes to him through his senses. See Layno, 6 Vet. App. 465. Lay testimony is competent to establish the presence of observable symptomatology, where the determination is not medical in nature and is capable of lay observation. Barr, 21 Vet. App. 303. 

The Board has reviewed all the evidence in the Veteran's claims file with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (holding that VA must review the entire record, but does not have to discuss each piece of evidence). Hence, the Board will summarize the relevant evidence where appropriate, and the Board's analysis below will focus specifically on what the evidence shows, or fails to show, as to the issue on appeal.

Left Wrist Disability Rating Analysis

The Veteran contends that the left wrist disability warrants a higher (compensable) initial disability rating because he has left wrist pain that radiates up the left arm, as well as stiffness and cramping. The Veteran also reported that the left wrist intermittently locks up for a few minutes approximately two to three times per month and that he experiences numbness-tingling of the left wrist, hand, and fingers. See September 2010 VA examination report; February 2011 Notice of Disagreement; September 2011 VA Form 9. VA treatment records during the appeal period show similar complaints by the Veteran.

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in the parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination on which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology or evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. § 4.40.

 The factors involved in rating disabilities of the joints include weakened movement (due to muscle injury, disease or injury of peripheral nerves, divided or lengthened tendons, etc.); excess fatigability; incoordination (impaired ability to execute skilled movements smoothly); more movement than normal (from flail joint, resections, nonunion of fracture, relaxation of ligaments, etc.); less movement than normal (due to ankylosis, limitation or blocking, adhesions, tendon-tie-up, contracted scars, etc.); or pain on movement, swelling, deformity, or atrophy of disuse. 38 C.F.R. 
§ 4.45. 

In DeLuca v. Brown, 8 Vet. App. 202, 205 (1995), the Court held that, for disabilities evaluated on the basis of limitation of motion, VA was required to apply the provisions of 38 C.F.R. §§ 4.40, and 4.45, pertaining to functional impairment. The Court instructed that in applying these regulations VA should obtain examinations in which the examiner determined whether the disability was manifested by weakened movement, excess fatigability, or incoordination. Such inquiry was not to be limited to muscles or nerves. These determinations were, if feasible, to be expressed in terms of the degree of additional range-of-motion loss due to any weakened movement, excess fatigability, or incoordination. The Court has also noted that, when rating spine disabilities, the Board must discuss any additional limitation of motion that a veteran has due to pain, weakness, or fatigue. See Cullen v. Shinseki, 24 Vet. App. 74, 85 (2010).

Under 38 C.F.R. § 4.59, with any form of arthritis, painful motion is an important factor of disability, the facial expression, wincing, etc., on pressure or manipulation, should be carefully noted and definitely related to the affected joints. The intent of the rating schedule is to recognize painful motion with joint or particular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. Crepitation either in the soft tissues such as the tendons or ligaments, or crepitation within the joint structures should be noted carefully as points of contact which are diseased. Flexion elicits such manifestations. 

Functional loss due to pain is to be rated at the same level as the functional loss where motion is impeded. Schafrath v. Derwinski, 1 Vet. App. 589, 592 (1991); VAOPGCPREC 9-98. Pursuant to 38 C.F.R. § 4.59, painful motion should be considered limited motion, even though a range of motion may be possible beyond the point when pain sets in. See Powell v. West, 13 Vet. App. 31, 34 (1999); Hicks v. Brown, 8 Vet. App. 417, 421 (1995). When 38 C.F.R. § 4.59 is raised by the claimant or reasonably raised by the record, even in non-arthritis contexts, the Board should address its applicability. See Burton v. Shinseki, 25 Vet. App. 1 (2011) (the Board had failed to address painful motion and the applicability of 
38 C.F.R. § 4.59 to an initial disability rating for residuals of a left shoulder injury with surgical repair). 

The Court clarified that, although pain may be a cause or manifestation of functional loss, limitation of motion due to pain is not necessarily rated at the same level as functional loss where motion is impeded. See Mitchell v. Shinseki, 25 Vet. App. 32 (2011); cf. Powell, 13 Vet. App. at 34; Hicks, 8 Vet. App. at 421; Schafrath, 1 Vet. App. at 592. Instead, the Mitchell Court explained that, pursuant to 38 C.F.R. §§ 4.40 and 4.45, the possible manifestations of functional loss include decreased or abnormal excursion, strength, speed, coordination, or endurance 
(38 C.F.R. §§ 4.40), as well as less or more movement than is normal, weakened movement, excess fatigability, and pain on movement (as well as swelling, deformity, and atrophy) that affects stability, standing, and weight-bearing 
(38 C.F.R. § 4.45). Thus, functional loss caused by pain must be rated at the same level as if the functional loss were caused by any of the other factors cited above. Therefore, in rating the severity of a joint disability, VA must determine the overall functional impairment due to these factors. 

Under Diagnostic Code (DC) 5003, a maximum rating of 10 percent is provided for degenerative arthritis of a major joint or group of minor joints that is established by x-ray findings with pain and noncompensable limitation of motion.

The Veteran is receipt of a noncompensable (zero percent) rating under DC 5215. See 38 C.F.R. § 4.31 (2014) (a 0 percent rating is assigned when the requirements for a compensable rating are not met). DC 5215, limitation of motion of the wrist, provides a 10 percent rating for limitation of motion of the wrist (major or minor) if dorsiflexion is less than 15 degrees or if palmar flexion is limited in line with the forearm. A 10 percent rating is the maximum rating provided under DC 5215 for any limitation of motion. 38 C.F.R. § 4.71a.

DC 5214 provides that ankylosis of the (major) wrist in a favorable position in 20 degrees to 30 degrees in dorsiflexion warrants a 30 percent disability rating. A 40 percent rating is provided for ankylosis in any other position except favorable. A 50 percent rating is provided for unfavorable ankylosis of the major wrist. 
38 C.F.R. § 4.71a.

Full wrist dorsiflexion or extension is zero degrees to 70 degrees. Full wrist palmar flexion is zero degrees to 80 degrees. Full wrist ulnar deviation is zero degrees to 45 degrees. Full wrist radial deviation is zero degrees to 20 degrees. 38 C.F.R. 
§ 4.71 Plate I (2014). 

After reviewing all the lay and medical evidence of record, the Board finds that the left wrist disability picture more nearly approximates the criteria for a 10 percent rating under DC 5003. The record reflects that the Veteran has arthritis and noncompensable limitation of motion of the left wrist due to pain. A November 2012 VA physical medicine rehabilitation note records a treating diagnosis of left wrist arthritis. A November 2012 VA electrodiagnostic consultation report stated that the overall clinical picture is most consistent with left wrist pain due to arthritis or degenerative changes, which, according to the VA physiatrist, is consistent with the Veteran's symptoms. In May 2013, a VA staff physician referred to the November 2012 electrodiagnostic study and assessed left wrist pain and tingling-numbness due to mild degenerative joint disease even though left wrist X-rays were unremarkable. 

Throughout the appeal period, the Veteran has consistently reported left wrist pain that sometimes shoots up the arm or to the hand and fingers, stiffness, and locking/cramping. See September 2010 and March 2014 VA examination reports; February 2011 Notice of Disagreement; September 2011 VA Form 9. VA treatment records throughout the appeal period show similar complaints as well as clinical findings of slight limitation of motion. See October 2011 VA treatment record (noting slight limitation of motion of the left wrist due to pain). Moreover, the September 2014 VA examiner concluded that pain, weakness, fatigability, or incoordination can significantly limit functional ability during flare-ups or after repetitive use of the left wrist. However, the September 2014 VA examiner indicated that estimating the degree of loss of range of motion of functional ability was not possible without observing the Veteran, especially during flare-ups. At no point throughout the appeal period did the Veteran have left wrist dorsiflexion of less than 15 degrees or palmar flexion limited in line with the forearm so as to warrant a compensable rating under DC 5214. As such, the weight of the lay and medical evidence of record demonstrates that the Veteran has noncompensable limitation of wrist motion. 

Evidence weighing against finding that the Veteran has left wrist arthritis includes X-rays performed in connection with the September 2010 and March 2014 VA examinations, which were negative for left wrist arthritis. Resolving reasonable doubt in the Veteran's favor, the Board finds that throughout the appeal period, the left wrist disability manifested by arthritis and noncompensable limitation of motion of the left wrist so as to warrant a 10 percent rating under DC 5003. See 38 C.F.R. §§ 4.40, 4.45, 4.59, 4.71a; see also DeLuca, 8 Vet. App. 202. 

As the left wrist disability is already rated 10 percent disabling, a higher rating is not possible under DC 5003. Higher ratings are only possible under specific diagnostic codes that rate on limitation of motion. DC Code 5003 directs that higher ratings based on limitation of motion are possible under specific diagnostic codes that rate limitation of motion of the joint involved, and that any ratings assigned under these diagnostic codes on the basis of limitation of motion cannot be combined with the 10 percent rating for arthritis under DC 5003. Id. 
 
After a review of all the lay and medical evidence of record, the Board finds that the weight of the evidence is against an assignment of an initial disability rating in excess of 10 percent for the left wrist disability under any DC. A 10 percent rating is the highest disability rating available under DC 5215; therefore, a higher rating under this DC is not possible. 38 C.F.R. § 4.71a. A higher initial rating is not warranted under DC 5214 because the weight of the lay and medical evidence of record demonstrates that the Veteran does not have favorable or unfavorable ankylosis of the left wrist. The Veteran has not alleged, and the record does not reflect, that he has ankylosis of the left wrist. The September 2010 VA examination report shows left wrist dorsiflexion to 60 degrees, palmar flexion to 80 degrees, radial deviation to 20 degrees, and ulnar deviation to 45 degrees; these range of motion clinical measurements are inconsistent with unfavorable or favorable ankylosis of the left wrist. The March 2014 VA examination report specifically noted that the Veteran does not have ankylosis of the left wrist. 

The Board has considered that pain, weakness, fatigability, or incoordination may result in additional functional limitation, and has noted the Veteran's subjective complaints of left wrist pain with activity; however, the evidence does not demonstrate that the pain and the other symptoms reported by the Veteran result in additional limitation of range of motion or limitation of function to a degree which more nearly approximates ankylosis of the left wrist in a favorable position in 20 degrees to 30 degrees in dorsiflexion, as required for the next higher 20 percent disability rating under DC 5214; therefore, a higher rating of 20 percent under DC 5214 for ankylosis of the wrist is not warranted for the entire initial rating period on appeal. Even applying such rating factors recognizing limitation of motion due to limiting factors such as pain with use, pain, weakness, fatigability, and incoordination as outlined in 38 C.F.R. §§ 4.40, 4.45, 4.59, and DeLuca, such limitation of motion to a noncompensable degree is already contemplated in the assignment of a 10 percent disability rating under DC 5003 and does not rise to the level on unfavorable or favorable ankylosis under DC 5214. 

For these reasons, the Board concludes that an initial rating in excess of 10 percent for service-connected left wrist disability is not warranted at any time during the appeal period. After weighing all the lay and medical evidence, the Board finds that a preponderance of the evidence is against a rating in excess of 10 percent for service-connected left wrist disability of status post left wrist fracture for the entire appeal period. See 38 C.F.R. §§ 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a; see also DeLuca, 
8 Vet. App. 202. 

Separate Rating for Radial Nerve Involvement

The Board has considered whether a separate rating is warranted for left upper extremity radial nerve involvement under DC 8514. 38 C.F.R. § 4.124a. Under DC 8514, a 20 percent disability rating is warranted for mild incomplete paralysis of the major radial nerve. A 30 percent disability rating is warranted for moderate incomplete paralysis of the major radial nerve. A 50 percent disability rating is warranted for severe incomplete paralysis of the major radial nerve. A disability rating of 70 percent is assigned for complete paralysis of the major radial nerve. 

Generally, neurological disorders are ordinarily to be rated in proportion to the impairment of motor, sensory or mental function. In rating peripheral nerve injuries and their residuals, attention should be given to the site and character of the injury, the relative impairment in motor function, trophic changes, or sensory disturbances. 

A note to 38 C.F.R. § 4.124a states that the term "incomplete paralysis" where involving peripheral nerve injuries, indicates a degree of lost or impaired function substantially less than the type picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. Also, when peripheral nerve involvement is wholly sensory, the rating should be for the mild or, at most, the moderate degree. The ratings for the peripheral nerves are for unilateral involvement; when bilateral, combine with application of the bilateral factor. 

The words "mild," "moderate," and "severe" are not defined in the above rating criteria. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." 38 C.F.R. § 4.6 (2014).

Neuritis, cranial or peripheral, characterized by loss of reflexes, muscle atrophy, sensory disturbances, and constant pain, at times excruciating, is to be rated on the scale provided for injury of the nerve involved, with a maximum equal to severe, incomplete, paralysis. 38 C.F.R. § 4.123, 4.124a, DC 8614. Similarly, neuralgia, cranial or peripheral, characterized usually by a dull and intermittent pain, of typical distribution so as to identify the nerve, is to be rated on the same scale, with a maximum equal to moderate incomplete paralysis. 38 C.F.R. §§ 4.124, 4.124a, DC 8714. 

After a review of all the lay and medical evidence of record, the Board finds that the Veteran's left wrist disability resulted in radial nerve involvement that more nearly approximates mild incomplete paralysis of the left (major) radial nerve so as to warrant a 20 percent rating under DC 8514. The March 2013 VA examination report shows that the Veteran is left hand dominant. The March 2013 VA examiner indicated that there is no neurological involvement other than sensory impairment of the dorsum of left hand, which involves sensory fibers from the radial nerve. In a September 2014 addendum, a VA examiner indicated that electrodiagnostic testing was completed in November 2012 and showed no evidence of radial sensory neuropathy and, therefore, there is no diagnosis of radial neuropathy because the clinical picture was noted to be most consistent with chronic left wrist pain due to arthritis/degenerative changes. A VA physiatrist indicated that the November 2012 electrodiagnostic study demonstrated diffuse mild prolongation of sensory peak latencies, but was otherwise normal. A physiatrist, also referred to as a rehabilitation physician, is a nerve, muscle, and bone expert who treats injuries or illnesses that affect how one moves. 

The Board finds that the criteria for a disability rating in excess of 20 percent for left upper extremity radial nerve involvement have not been met or nearly approximated at any time during the initial rating period on appeal because left upper extremity nerve involvement has not been manifested by moderate incomplete paralysis of the left upper extremity. 
38 C.F.R. § 4.124a, DC 8514. 

The Veteran has reported left wrist pain, locking, and cramping. He also reported tingling and numbness affecting the flexor aspects of all left upper extremity fingers except the thumb. See October 2011, March 2012, and May 2013 VA treatment records. The Veteran also complained of tingling and numbness along the dorsum of the left hand from the wrist to the metatarsophalangeal joint, as well as locking of left wrist and fingers. See August 2012 VA treatment record.

The Board finds that the weight of the lay and medical evidence of record demonstrates that the left wrist disability has not more nearly approximated moderate left upper extremity radial nerve involvement at any point during the initial rating period on appeal. In this regard, an October 2011 VA treatment record shows that the Veteran reported that he had left wrist pain and that the left wrist locks up for less than a minute every few days. The Veteran also reported in October 2011 that he had tingling-numbness affecting the flexor aspects of all left upper extremity fingers except the thumb. The October 2011 VA staff physician assessed possible carpal tunnel syndrome. 

A March 2012 VA physical therapy record shows that the Veteran reported tingling and numbness more common at night. Upon examination in March 2012, the VA physical therapist indicated that left wrist active range of motion was within normal limits and that left hand grasp strength was within normal limits with negative tinsel's sign test, which indicates no irritated left hand nerves. In August 2012, the Veteran reported that he had tingling-numbness along the left hand dorsum from the wrist to the metatarsophalangeal joint, and that the wrist locks-up intermittently, which can last for minutes. The August 2012 staff physician assessed left wrist paresthesias, pain and intermittent locking, and prescribed over-over-counter pain medication along with range-of-motion exercises. The Board finds that this disability picture does not more nearly approximate moderate left upper extremity radial nerve involvement. 

A November 2012 VA electrodiagnostic note shows that the Veteran reported chronic left wrist pain and hand cramping, as well as locking up of the wrist two-to-three times per month for a few minutes each. Upon examination in November 2012, the VA physiatrist stated that the examination is significant for mild snuffbox and scaphoid-lunate junction tenderness to palpation, mild grip weakness in the left hand compared to right, and difficulty with thumb and small finger opposition; left grip strength and sensation to light touch were otherwise intact for all dermatomes with negative tinsel's sign and phalen's tests. The November 2012 VA physiatrist indicated that the electrodiagnostic study demonstrated diffuse mild prolongation of sensory peak latencies, but was otherwise normal. Given negative comparison studies and subjectively cool limb, the VA physiatrist suspected that this was due to temperature rather than true pathology. The VA physiatrist attempted to warm the left upper extremity with a heating pad, but stated that it can be difficult to sustain adequate distal limb temperature throughout testing when the examination room is cool. 

The November 2012 VA physiatrist indicated that the overall clinical picture is most consistent with chronic wrist pain due to arthritis and degenerative changes, which is consistent with the Veteran's history of symptoms that are worse in cold and rainy weather with relief from left wrist pain through heat treatment. Again, the Board finds that this disability does not more nearly approximate moderate incomplete paralysis due to left upper extremity radial nerve involvement, especially given the normal electrodiagnostic study except for mild prolongation of sensory peak latencies. 

The March 2013 VA examination report indicates that there is no neurological involvement other than sensory impairment of dorsum of left hand which involves sensory fibers from radial nerve. Moreover, a May 2013 VA treatment record shows that the Veteran complained of left wrist pain and stated that tingling-numbness occurs less than before and is not bothersome. The May 2013 VA staff physician assessed left wrist pain and tingling-numbness due to mild degenerative joint disease of the left wrist. 

Based on all the above, the Board finds that the left upper extremity radial nerve involvement associated with the service-connected left wrist disability more nearly approximates mild incomplete paralysis and does not more nearly approximate moderate incomplete paralysis of the radial nerve. In fact, there is clinical evidence of record that indicates that there is no neurological involvement of the left upper extremity or that any neurological symptoms are mild and may be attributable to arthritis/degenerative changes of the left wrist. As such the Board is resolving doubt in favor of the Veteran by finding that the service-connected left wrist musculoskeletal disability resulted in radial nerve involvement that more nearly approximates mild incomplete paralysis of the left radial nerve so as to warrant a separate 20 percent rating under DC 8514. 38 C.F.R. § 4.124a.

A disability rating in excess of 20 percent for upper extremity radial nerve is not warranted because, as discussed above, the weight of the lay and medical evidence does not more nearly approximate moderate incomplete paralysis of left upper extremity radial nerve so as to warrant the next higher disability rating under DC 8514. See 38 U.S.C.A. § 5107; 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.124a.

Extraschedular Consideration

The Board has considered whether referral for an extraschedular evaluation would have been warranted for the left wrist disability for any part of the initial rating period on appeal. An extraschedular disability rating is warranted based upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b)(1); see Fanning v. Brown, 4 Vet. App. 225, 229 (1993).

Under Thun v. Peake, 22 Vet App 111 (2008), there is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the Board must determine whether the claimant's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the VA Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether the veteran's disability picture requires the assignment of an extraschedular rating. 

Turning to the first step of the extraschedular analysis, the Board finds that the symptomatology and impairment caused by the Veteran's left wrist disability, throughout the appeal period, is contemplated by the schedular rating criteria, and no referral for extraschedular consideration is required. The service-connected left wrist disability has been manifested by pain, locking, tenderness to palpation, and stiffness with some noncompensable limitation of motion. The symptoms and impairment due to the left wrist disability are contemplated by the rating schedule, as both DC 5003 and DC 5215 contemplate 10 percent ratings for limitation of motion that is caused by pain and painful motion with use. The schedular rating criteria also provide for separate ratings for neurological manifestations. See 38 C.F.R. §§ 4.124, 4.124a. 

The rating criteria reasonably describe the Veteran's disability level and symptomatology, and provide for higher ratings for additional or more severe symptoms, such an ankylosis, than currently shown by the evidence. The rating criteria for wrist disabilities contemplate limitation of motion of the wrist and whether there is favorable or unfavorable ankylosis. The schedular rating criteria specifically provide for disability ratings based on limitation of motion including due to pain and other orthopedic factors which are incorporated into the schedular rating criteria (see 38 C.F.R. §§ 4.21, 4.40, 4.45, 4.59; DeLuca). The Board finds that the schedular rating criteria reasonably describe the Veteran's left wrist disability picture.

The Board finds that the symptomatology and impairment caused by the Veteran's left upper extremity radial nerve involvement associated with the service-connected left wrist musculoskeletal disability is specifically contemplated by the schedular rating criteria, and no referral for extraschedular consideration is required. As discussed above, the left upper extremity involvement manifested by no more than mild incomplete paralysis due to symptoms of numbness-tingling of the left wrist, hand, and fingers, as well as decreased left grip strength. A comparison between the level of severity and symptomatology of the Veteran's symptoms with the established criteria found in the rating schedule for impairment of the radial nerve under DC 8514 shows that the rating criteria reasonably describe the disability and contemplate the Veteran's mild sensory and motor symptoms associated with left upper extremity nerve involvement as a result of the left wrist disability. DC 8514 also contemplates more severe symptoms due to moderate and severe incomplete radial nerve paralysis. 

Moreover, to the extent that locking of the left wrist, hand, or fingers is a result of pain, it has been considered under painful motion under DCs 5003 and 5215. To the extent that such locking is a result of left upper extremity radial nerve involvement, it has been considered under mild incomplete paralysis as contemplated under DC 8514, especially that, as reported by the Veteran, such locking is intermittent (two-to-three times per month) and only lasts for a few minutes each time. Therefore, the Board finds that the record does not reflect that the left upper extremity radial nerve involvement is so exceptional or unusual so as to warrant referral for consideration of the assignment of a higher rating on an extraschedular basis. 

The schedule is intended to compensate for average impairments in earning capacity resulting from service-connected disability in civil occupations. 
38 U.S.C.A. § 1155. "Generally, the degrees of disability specified [in the rating schedule] are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability." 38 C.F.R. § 4.1. In this case, the problems reported by the Veteran are specifically contemplated by the criteria discussed above, including the effect on his daily life. In the absence of exceptional factors associated with the left wrist disability, the Board finds that the criteria for submission for assignment of an extraschedular rating pursuant to 38 C.F.R. § 3.321(b)(1) are not met. See Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995). 

According to Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be entitled to "consideration [under 38 C.F.R. § 3.321(b)] for referral for an extra-schedular evaluation based on multiple disabilities, the combined effect of which is exceptional and not captured by schedular evaluations." Referral for an extraschedular rating under 38 C.F.R. § 3.321(b) is to be considered based upon either a single service-connected disability or upon the "combined effect" of multiple service-connected disabilities when the "collective impact" or "compounding negative effects" of the service-connected disabilities, when such presents disability not adequately captured by the schedular ratings for the service-connected disabilities. 

In this case, the Veteran has not asserted, and the evidence of record has not suggested, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. There is neither allegation nor indication that the collective impact or combined effect of more than one service-connected disability presents an exceptional or unusual disability picture to render inadequate the schedular rating criteria. 

In the absence of exceptional factors associated with the service-connected left wrist disability and associated radial nerve involvement, the Board finds that the criteria for submission for assignment of an extraschedular rating pursuant to 
38 C.F.R. § 3.321(b)(1) are not met. See Bagwell, 9 Vet. App. 337; Shipwash, 
8 Vet. App. 218, 227.

Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) is potentially an element of all increased rating claims. See Rice v. Shinseki, 22 Vet. App. 447 (2009). In this case, the record does not reflect, and the Veteran does not allege, that he is unemployable due to the service-connected disability. In fact, the Veteran has stated that left wrist pain does not affect his daily activities. See March 2014 VA pain education note. Moreover, the March 2014 VA examiner noted that the Veteran's left wrist disability does not affect his ability to work. Accordingly, the Board finds that a TDIU has not been raised and, therefore, is not before the Board on appeal.


ORDER

An initial disability rating of 10 percent, and no higher, for the service-connected status post left wrist fracture for the entire initial rating period on appeal is granted. 

A separate rating of 20 percent, and no higher, for left upper extremity radial nerve involvement associated with the service-connected status post left wrist fracture, for the entire initial rating period on appeal, is granted.



____________________________________________
J. PARKER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs